UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CAFFEE L. HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:02cv426 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying plaintiff's application for Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §§ 1382, 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since the date she filed this application on December 20, 1995.

2. The claimant has an impairment or a combination of impairments

2

    considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.  The claimant's testimony and her presentation to medical professionals are not reliable.

5.  The claimant has the residual functional capacity to stand or walk for six hours in an eight hour day, lift and/or carry ten pounds frequently, and twenty pounds occasionally.

6.  The claimant's past relevant work as a waitress, dietary aide, and factory laborer required the performance of work-related activities at the light level of exertion, either as she actually performed the jobs or as they are performed in the national economy (20 CFR § 416.965).

7.  The claimant can perform a full range of work at the light level of exertion.

8.  The claimant can perform her past relevant work.

9.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20CFR § 416.920(f)).

(Tr. 36-37).

Based upon these findings, the ALJ determined that the plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

The plaintiff, who is proceeding pro se, filed her opening brief on October 12, 2004. On December 27, 2004, the defendant filed a memorandum in support of the Commissioner's decision. Upon full review of the record in this cause, this court is of the view that the ALJ's decision is supported by substantial evidence and must be affirmed.

A five step test has been established to determine whether a claimant is disabled. See

3

Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

The plaintiff filed her SSI application on December 20, 1995, alleging she became disabled on November 1, 1982.  The plaintiff's application was denied initially, upon reconsideration, and after a hearing before an ALJ.  On July 15, 1998, the ALJ issued a decision finding that the plaintiff was not disabled.  The plaintiff requested review of the ALJ's decision.  The Appeals Council then vacated the ALJ's July 1998 decision and remanded the case to the ALJ for further proceedings.  Another hearing was held on June 14, 2001.  In a May 21, 2002 decision, the ALJ found that the plaintiff was not disabled because she could perform her past relevant work.  The Appeals Council denied the plaintiff's request for review of the ALJ's May 2002 decision and the ALJ's decision became the final decision of the Commissioner.

The plaintiff then filed a civil suit for review of the ALJ's decision in this court.  Because

4

the plaintiff's claim file and the cassette tape of the administrative hearing could not be promptly located, this case was remanded to the Agency pursuant to sentence six of 42 U.S.C. § 405(g). The Appeals Council was subsequently able to locate the file and cassette tape and the ALJ's May 2002 decision was reinstated as the final decision of the Commissioner and is now subject to judicial review.

The plaintiff was born in 1962 and was thus thirty-nine years old on the date the ALJ issued his decision. The plaintiff had the equivalent of a high school education and previously worked as a waitress, dietary aide, factory worker, receptionist and secretary. The plaintiff alleged she was unable to work due to diabetes, hidradenitis cysts, thyroid disease, mixed connective tissue disease, arthritis, sinusitis, and depression.

The record reflects that the plaintiff saw numerous physicians, including Dr. Hodgini, Dr. Bhat, Dr. Hugenberg, and Dr. Beyer, for a variety of ailments, such as diabetes mellitus, depression, fibromyalgia, hypothyroidism, musculoskeletal pain, mixed connective tissue disease, left arm pain and hand paresthesias, and evaluation of musculoskeletal pain and burning.

The plaintiff also presented to the emergency room on numerous occasions for various complaints, including dizziness, abdominal pain, and nausea; cough and congestion; headache and arm pain; left-sided neck, arm, back, and leg pain; total body pain; diabetes; abdominal pain and vomiting; and left ear and face pain.

Dr. Hodgini completed a "Physical Residual Functional Capacity Questionnaire" form in December 1997 and indicated that the plaintiff had insulin-dependent diabetes mellitus, hypothyroidism, depression, fibromyalgia, and uterine fibroids. Dr. Hodgini reported that the plaintiff's conditions were able to be controlled with medication therapy and that she lead a

5

reasonably normal lifestyle. (Tr. 633). Regarding the plaintiff's physical abilities, Dr. Hodgini wrote "unable to quantitate". (Tr. 635-36, 638).

Dr. Kramer, a clinical psychologist, evaluated the plaintiff in February 1996. After an interview and examination, he diagnosed recurrent major depression. In July 1996, the plaintiff presented for mental health therapy and was diagnosed with dysthymic disorder. The plaintiff subsequently saw Dr. Salazar, a psychiatrist, and also met with Dr. Didier, a therapist. Additionally, the plaintiff met with Dr. Mills, a psychologist.

Dr. Rogers performed a neuropsychological evaluation in July 1997 to determine the possible effects from carbon monoxide poisoning. Dr. Rogers indicated that the plaintiff had decreased mental efficiency secondary to a mood disorder (depression) and adjustment to a chronic physical condition.

Dr. Mills completed a questionnaire in December 1997 and indicated that the plaintiff had a depressive disorder and did not appear to be able to sustain the energy level necessary for steady employment. Dr. Mills subsequently was asked to supplement the questionnaire.

Dr. Vodde performed a psychological evaluation of the plaintiff in February 1998. After an interview, testing and examination, Dr. Vodde indicated symptom exaggeration and/or magnification as a "rule out" diagnosis and diagnosed mood disorder due to multiple medical problems and cannabis abuse. Dr. Vodde concluded that the plaintiff was as independent in her activities of daily living as her physical condition allowed. Dr. Vodde observed that the plaintiff functioned adequately in managing and directing her children. The plaintiff had no problems in her ability to communicate effectively or interact appropriately with others. Dr. Vodde found no impairment in the plaintiff's cognitive functioning, and her fund of information, judgment,

6

reasoning, problem solving ability, abstracting ability, arithmetic reasoning, and memory were all in the average range.  Dr. Vodde specifically indicated that there were no cognitive factors that had a negative impact on the plaintiff's ability to obtain or maintain competitive employment.  The plaintiff showed no impairment in her ability to focus her attention and sustain her concentration.  There was no evidence suggesting that the plaintiff was not able to complete tasks in a timely manner.  Dr. Vodde concluded that all problems of a functional nature were related to physical factors.  (Tr. 662).

The plaintiff continued to see Dr. Mills sporadically through January 1999.  In May 1999, Dr. Mills indicated that the plaintiff's case was closed as she had not followed through with treatment for several months and attempts to contact her had been unsuccessful.  Dr. Mills also noted that the plaintiff had seldom followed through with appointments and had difficulty remaining consistent in taking care of both her physical and mental needs.  (Tr. 732).  At the June 2001 administrative hearing, the plaintiff testified that she stopped seeing Dr. Mills, but "[didn't] have a good reason for stopping because the depression still exist[ed]".  (Tr. 102).

Dr. Barkhaus, the vocational expert present at the December 1997 administrative hearing, described the plaintiff's past work as a receptionist as sedentary work and assembly job as light work.  (Tr. 82-83).  Dr. Bond, also a vocational expert, described the plaintiff's past work as a receptionist as sedentary work, but stated that the plaintiff performed the job at the light level of exertion; waitress as light work; laborer as light work, but that the plaintiff performed the job at the medium level of exertion; and dietary aide as light work as performed by the plaintiff.  (Tr. 730).

The Social Security Act defines disability as the "inability to engage in any substantial

7

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The agency has promulgated regulations that set forth a five-step sequential process for analyzing disability claims. 20 C.F.R. §§ 404.1520, 416.920. A claimant has the joint burdens of production and persuasion through at least step four, where the individual's residual functional capacity (RFC) is determined. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); 20 C.F.R. §§ 404.1545, 416.945. At step five the Commissioner bears the burden of proving that there are jobs in the national economy that the plaintiff can perform. Herron v. Shalala, 19 F.3d 329, 333 n.18 (7th Cir. 1994). In the present case, the ALJ found that the plaintiff retained the ability to perform her past relevant work.

   The agency's final decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that the agency findings "as to any fact, if supported by substantial evidence, shall be conclusive." "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Furthermore, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or on the [Commissioner's] designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)(citations omitted). This court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

   In her decision, the ALJ found that the plaintiff had not engaged in substantial gainful

activity between her alleged onset date and her date last insured.  At step two, the ALJ determined that the plaintiff had severe impairments, but found, at step three, that she did not have an impairment or combination of impairments that met or equaled any impairment in the Listing of Impairments.  At step four, the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work.   The ALJ also determined that the plaintiff's testimony and presentation to medical professionals was not reliable.

   The defendant claims that substantial evidence supports the ALJ's finding that the plaintiff was not disabled because she was capable of performing her past relevant work.  As noted, the ALJ found that the plaintiff had fibromyalgia and diabetes mellitus, which were "severe" impairments within the meaning of the federal regulations.  After thoroughly considering these impairments, the ALJ found that the plaintiff retained the residual functional capacity (RFC) to perform the full range of light work, *i.e.*, lift/carry twenty pounds occasionally and ten pounds frequently and stand or walk for six hours in an eight-hour day.  Considering the plaintiff's RFC and the exertional levels of the plaintiff's past work, the ALJ found that the plaintiff could perform the jobs of waitress, dietary aide, and factory laborer, either as those jobs ere usually performed or as the plaintiff performed them.

   The plaintiff does not allege any specific errors she believes were made by the ALJ.  The plaintiff briefly describes her medical condition, claiming that it renders her unable to work.  Many of the plaintiff's claims of disabling medical conditions pertain to conditions that arose after May 21, 2002, the date of the ALJ's decision, and are not relevant to this case.  The remainder of the plaintiff's descriptions of medical conditions are not supported by any evidence, and thus may not be considered.

9

The defendant argues that the ALJ considered the record evidence and reasonably concluded that the plaintiff had the RFC for light work.  In a lengthy and thorough discussion of the record evidence, the ALJ considered the plaintiff's testimony and subjective allegations and explained why he found the plaintiff's claims to not be reliable.  (Tr. 23-26, 32).  For example, the ALJ discussed in detail the inconsistencies in the plaintiff's presentation to various health providers, as well as the record evidence indicating that the plaintiff was not compliant with her physician's recommendations and prescribed medical regimen.  (Id.).  The ALJ also noted the record evidence suggesting that the plaintiff was not compliant with taking medication as prescribed and possibly engaged in drug-seeking behavior.  (Tr. 24, 32).  The ALJ also considered the plaintiff's frequent emergency room visits.  (Tr. 24-25, 27).  After considering the evidence and decision of the ALJ, this court finds that the ALJ provided a lengthy and detailed explanation for finding the plaintiff's subjective claims unreliable.

Additionally, it is clear that the ALJ appropriately evaluated the plaintiff's credibility and reasonably concluded that the plaintiff's subjective allegations of disabling limitations were not fully credible.  The Seventh Circuit has long recognized that an ALJ's credibility findings are entitled to considerable deference.  In Imani ex rel. Hayes v. Heckler, 797 F.2d 508, 512 (7th Cir. 1986), the Seventh Circuit Court of Appeals articulated its well-established rule that an ALJ's credibility determinations will not be overturned unless "patently wrong."  More recently, in Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000), the Seventh Circuit reiterated that "[b]ecause hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference. . . .  We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'"

(Citations omitted).  The Seventh Circuit further observed that, although an ALJ may not reject a claimant's subjective complaints "solely because they are not fully supported by the medical [evidence, the ALJ] may consider that as probative of the claimant's credibility."  Id.  (Citation omitted).

In the present case, the ALJ also explicitly considered the record physician opinions and explained the weight which he attributed to them.  For example, he considered the treatment rendered by Dr. Bhat, a neurologist (Tr. 25), as well as that given by the plaintiff's family physicians, Dr. Phillips and Dr. Hodgini (Tr. 25-26, 29) and by Dr. Beyer (Tr. 28).  The ALJ considered the neuropsychological evaluation performed by Dr. Rogers (Tr. 33).  The treatment from Dr. Hugenberg, a rheumatologist, was also discussed by the ALJ (Tr. 26, 29), as well as that from Dr. Rao, an ear, nose and throat specialist.  (Tr. 26-27).  Clearly, by considering all of this evidence, which supports the ALJ's decision that the plaintiff is not disabled, the ALJ reasonably concluded that the plaintiff had the physical ability to perform light work.  Notably, the plaintiff has not identified any record evidence demonstrating otherwise.

With respect to the plaintiff's mental condition, the ALJ explicitly discussed Dr. Vodde's psychological evaluation (Tr. 23-24, 33-35), Dr. Salazar's treatment (Tr. 24, 32), the plaintiff's counseling with Dr. Mills (Tr. 32-33, 34-35), and Dr. Kramer's psychological evaluation (Tr. 31).  The ALJ also expressly discussed the well-known "B criteria"[1] and found that, although the plaintiff might have been somewhat limited in her activities of daily living due

---

[1] In evaluating an individual's mental impairment, the severity of her limitation of functioning in four broad functional areas will be rated: activities of daily living, social functioning, maintaining concentration, persistence, or pace, and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3).

to her physical impairments (which were reasonably accommodated by restricting her to light work), the plaintiff did not have any limitations of daily living as a result of her alleged depression. (Tr. 30). The ALJ also concluded that the plaintiff did not have more than mild difficulties in maintaining social functioning (Tr. 30). The ALJ considered the third and fourth areas of functioning and concluded that the plaintiff did not have limitation of concentration, persistence, or pace and had no episodes of decompensation. (Tr. 30). Based on the ALJ's consideration of the evidence (which again supports the conclusion that the plaintiff is not disabled), it is clear that the ALJ appropriately concluded that the plaintiff did not have a severe mental impairment. See 20 C.F.R. § 416.920a(d)(1).

As noted, even thought the ALJ found that the plaintiff's mental impairment was not severe, the ALJ discussed the mental health professional opinions in the record and explained the weight given to them. The ALJ explained that he gave great weight to Dr. Vodde's opinion because Dr. Vodde reviewed much of the medical record and also examined the plaintiff. (Tr. 34). After an interview, testing, and examination, Dr. Vodde concluded that the plaintiff was as independent in her activities of daily living as her physical condition allowed. (Tr. 662). Dr. Vodde observed that the plaintiff functioned adequately in managing and directing her children. (Tr. 662). The plaintiff had no problems in her ability to communicate effectively or interact appropriately with others. (Tr. 662). Dr. Vodde found no impairment in the plaintiff's cognitive functioning, and her fund of information, judgment, reasoning, problem solving ability, abstracting ability, arithmetic reasoning, and memory were all in the average range. (Tr. 662). Dr. Vodde specifically indicated that there were no cognitive factors that had a negative impact on the plaintiff's ability to obtain or maintain competitive employment. (Tr. 662). Likewise the

plaintiff showed no impairment in her ability to focus her attention and sustain her concentration. (Tr. 662). Nor was there any evidence suggesting that the plaintiff was not able to complete tasks in a timely manner. (Tr. 662). In light of this record, it is clear that Dr. Vodde's assessment fully supports the ALJ's finding that the plaintiff did not have any mental functional limitations. This court holds that the ALJ's findings are fully supported by substantial evidence in the record as a whole.

Dr. Barkhaus, the vocational expert present at the December 1997 administrative hearing, described the plaintiff's past work as a receptionist as sedentary work and assembly job as light work. (Tr. 82-83). Dr. Bond, also a vocational expert, described the plaintiff's past work as a receptionist as sedentary work, but the plaintiff performed the job at the light level of exertion; waitress as light work, laborer as light work, but performed by the plaintiff at the light level of exertion, and dietary aide as light work as performed by the plaintiff. In light of the testimony of the vocational experts, it is clear that the ALJ reasonably concluded that the plaintiff could perform her past relevant work as a waitress, dietary aide, and factory laborer. See 20 C.F.R. § 416.920(f); Social Security Ruling 82-61. Accordingly, this court concludes that the ALJ's finding that the plaintiff was not disabled because she could perform her past relevant work is supported by substantial evidence.

## Conclusion

Based on the foregoing, the ALJ's May 21, 2002 decision is hereby AFFIRMED.

Entered: April 12, 2005.

                                                          <u>s/ William C. Lee</u>
                                                          William C. Lee, Judge
                                                          United States District Court